UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES BAILEY, as Personal Representative
of the Estate of Jane Bailey, deceased, and
ROBERT BAILEY,

       Plaintiff,                       Case No. 11-14199
                                           HON. GEORGE CARAM STEEH
vs.

NYLONCRAFT, INC.,

       Defendant.
_____/

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT [#18], GRANTING DEFENDANT'S MOTION
IN LIMINE TO PRECLUDE STAN SMITH'S LOSS OF SOCIETY/RELATIONSHIP
DAMAGES TESTIMONY [#19] AND DENYING PLAINTIFFS' MOTION
TO STRIKE CERTAIN OF DEFENDANT'S EXPERTS [#25]

I.      Introduction

On September 23, 2011, defendant, Nyloncraft, Inc., timely removed the instant action to this court pursuant to 28 U.S.C. § 1441 and § 1332(a)(1) because this action involves citizens of different states and an amount in controversy in excess of $75,000.00. Presently before the court are the following motions: (1) plaintiffs' motion for partial summary judgment, (2) defendant's motion *in limine* to preclude expert testimony regarding loss of society damages and (3) plaintiffs' motion to strike certain of defendant's experts. The court held oral argument on the pending motions on July 11, 2012.

II.     Factual Background

The instant personal injury action arises out of a motor vehicle accident that occurred on July 28, 2010. On that date, defendant's employee, Bernard Sparazynski, was traveling eastbound on interstate 94 in a 2008 Ford Taurus owned by defendant. Sparazynski was traveling to Ford Motor Company in Dearborn, Michigan. Plaintiff's decedent, Jane Bailey, was operating a 2005 Buick Lacrosse, also traveling eastbound on interstate 94. Her son, Robert Bailey, was seated in the front passenger seat. At approximately 9:10 a.m., Sparazynski's vehicle collided into Bailey's vehicle, causing Bailey's vehicle to be propelled forward and overturned before coming to rest. As a result, Jane Bailey received life threatening injuries ultimately leading to her death and Robert Bailey sustained serious bodily injuries to his head, neck, upper and lower back, legs, hips, eyes, arms and shoulders, all of which produce severe pain requiring constant medical care.

III.    Law & Analysis

A.      Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs request that this court enter partial summary judgment in their favor as to the issue of defendant's liability with respect to counts I and II of plaintiffs' first amended complaint. Count I of plaintiffs' first amended complaint alleges that defendant is vicariously liable for the acts of its employee, who was acting in the scope and course of his employment when his negligence caused his vehicle to collide into the rear of Bailey's vehicle. In Count II, plaintiffs allege that defendant is liable because at the time of the accident, it was the owner of the 2008 Ford Taurus within the meaning of Michigan's Civil

Liability Act, Michigan Compiled Laws § 257.401 and gave its employee permission and consent to operate the vehicle.

In response to plaintiffs' motion for partial summary judgment and at the hearing, defendant agreed to stipulate to the entry of an order for partial summary judgment that describes defendant as vicariously liable for the negligence of its employee and that said negligence was a proximate cause of the death of plaintiffs' decedent, Jane Bailey. Defendant also agreed to stipulate to an order of partial summary judgment as to plaintiff Robert Bailey on the basis of defendant's vicarious liability for the negligence of its employee. Therefore, the court grants partial summary judgment in favor of plaintiffs on counts I and II of the first amended complaint on the issue of defendant's vicarious liability for the negligence of its employee.

B.     Defendant's Motion *in Limine*

Defendant argues that this court should preclude plaintiffs from offering the testimony of Stan Smith, an economist, regarding the value of the loss of society or companionship to Jane Bailey's family members because this evidence is irrelevant, unreliable and prejudicial. According to Smith, the value of an average life can be used to measure "the loss of the society or relationship sustained by Mrs. Bailey's surviving family [members]" after her death. *See* Def.'s Mot., Ex. A at 1. Thus, Smith's report purports to measure how much Jane Bailey's relationship with her husband and her sons is worth in current U.S. dollars.

Smith begins with "the value of preserving the ability to live a normal life." *Id.* at 7. This "value" focuses on three kinds of studies: (1) those measuring consumer behavior and purchase of safety devices, (2) studies measuring wage risk premiums to workers, and (3)

those consisting of cost-benefit analyses of regulations. Smith concludes that based on these studies, "the value of [life is] between $4.4 and $7.5 million, with $5.9 million representing a conservative yet credible estimate of the average (and range midpoint) of the values of the a statistical life published in the studies in year 2005 dollars." *Id.* at 17. Smith then opines that "the central tendency of the range of the economic studies to be approximately $4.3 million in year 2011 dollars." *Id.* at 9, 17. He notes that this figure "is approximately 24 percent lower than a conservative average estimate based on the credible meta-analyses." Smith then applies this central tendency to Jane Bailey's family opining that: "Based on a benchmark loss of 40 percent for James, 25 percent for Michael, and 50 percent for Robert, my opinion of the loss of relationship as a result of the death of Jane Bailey is as follows: $2,073,009 for James Bailey, $3,975,353 for Michael Bailey, and $8,691,090 for Robert Bailey." *Id.* at 9.

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) guide this court's determination of whether Mr. Smith's proposed expert testimony is admissible. Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In *Daubert*, the United States Supreme Court provided a framework for determining whether an expert's opinion complies with Rule 702. *See Daubert*, 509 U.S. at 597. Expert testimony is admissible if (1) it is relevant, and (2) reliable. *Id.* "The relevancy requirement ensures that there is a fit between the testimony and the issue to

be resolved at trial." *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). "Whether the evidence is relevant refers to whether or not the evidence will assist the jury in determining the existence of any fact of consequence." *Kurncz v. Honda North America, Inc.*, 166 F.R.D. 386, 388 (W.D. Mich. 1996).

Whether the evidence is reliable requires analysis utilizing a four factor test, specifically, (1) whether the theory or technique has been or can be tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the technique has been accepted by the relevant scientific community, or has been able to attract only minimal support within the community. *Daubert*, 509 U.S. at 593-94; *Kurncz*, 166 F.R.D. at 388.

The court finds that Smith's testimony is irrelevant because it will not assist the trier of fact. There is no logical relationship between the value of the average life and loss of society/companionship damages. Smith does not explain why the value of Jane Bailey's relationships with her family members would equal the value of the life of a statistically average individual. In fact, Smith's assertion has been rejected by this court in *Brereton v. United States*, 973 F. Supp. 752 (E.D. Mich. 1997). In *Brereton*, as in this matter, Smith asserted that the "value of preserving the ability to live a normal life" was also a measure of "loss of society and companionship." *Id.* at 758. The *Brereton* court concluded that "[e]ven if one were to accept Mr. Smith's testimony as producing a scientifically reliable value of the decedent's life, the conclusion that this same figure provides a value of that person's relationship to his or her survivors is unfounded." *Id.* Concluding that Smith's testimony was irrelevant and therefore inadmissible under Rule 403, the *Brereton* court further held that:

> The intrinsic value of the decedent's life is an unfit measure of the value of his relationship with the surviving plaintiffs; it is like comparing apples and oranges. To make that valuation the factfinder will need to consider the characteristics of the relationship, not the value society place on the safety and health of statistically average individual.

*Id.* Plaintiffs do not address *Brereton* in their responsive brief. In fact, plaintiffs do not address the fact that "[t]he willingness to pay model on the issue of calculating hedonic damages is a troubled science in the courtroom, with the vast majority of published opinions rejecting the evidence." *Kurncz*, 166 F.R.D. at 388. Rather, plaintiffs take issue with the fact that the opinions relied upon by defendant are old, from the 1990s. However, plaintiffs do not cite a single published opinion in which Smith's loss of society/companionship testimony has been admitted over a *Daubert* challenge. While plaintiffs argue that Smith's testimony has been admitted in over 238 state and federal courts, there is no indication that any of these courts were presented with a challenge under *Daubert*, nor whether his testimony was solely on the value of the statistical average human life or whether it was testimony concerning the use of the value of the average life to calculate loss of society damages.

At the hearing on this matter, the court asked whether these state and federal courts had been presented with a *Daubert* challenge to Smith's loss of society/companionship damages, however plaintiff was not certain of the answer to the court's question, and submitted a supplemental brief after oral argument. *See* Dkt. No. 42. Plaintiff attached a July 12, 2012 letter from Smith to this supplement, however the letter does not satisfy the court that Smith's testimony concerning use of the "value of life" to calculate loss of society damages has been accepted in over 200 courts. Smith states "[a]s noted in Section IV of my original report dated November 8, 2011, my testimony on the *value of life* has been

accepted in approximately 200 state and federal cases nationwide . . . ." *Id.*, Ex. 1 (emphasis added).

Testimony concerning the "average life" will not assist the jury in understanding Jane Bailey and the relationship she had with her spouse and two children. *See Ayers v. Robinson*, 887 F. Supp. 1049 (N.D. Ill. 1995) (rejecting Smith's willingness to pay method as a reliable indicator of the value of a particular individual's life, because "the willingness to pay data upon which Hedonic Damages relies goes to one thing (value of a statistical life) while the jury is called upon to determine a potentially very different figure (value of [the decedent]'s life).").

Smith's testimony will not assist the trier of fact because the jury does not need expert testimony to understand the value of a relationship with one's mother or spouse as all of the jurors will have close relationships and know the value of such relationships. *See Saia v. Sears Roebuck and Co., Inc.*, 47 F. Supp. 141, 150 (D. Mass. 1999). Furthermore, Smith's analysis is based upon studies measuring consumer behavior in purchasing safety devices and premiums implicitly demanded by workers for high risk jobs. *See Kurncz*, 166 F.R.D. at 390 ("The use of a statistical person is not necessarily inappropriate, but in the end, Mr. Smith's method is nothing more than a compilation of lay responses. Giving the jury a number based on lay preferences in and of itself is no more helpful or appropriate than informing them of other jury verdicts or of the gallery's preferences.")

Smith's testimony is also not reliable. Contrary to Smith's argument, there is no way to verify whether his method accurately measures the value of Jane Bailey's companionship to her spouse and sons. "Some predictions or assumptions of economists can be validated at least in retrospect; e.g., life expectancy, inflation, etc. This is not true

for valuation of hedonic damages." *Kurncz*, 166 F.R.D. at 389. Here, Smith's analysis results in a range of possible values for human life, however he ultimately selects $4.3 million as the value of Jane Bailey's life, without explanation as to how he arrived at this figure, only to describe it as "conservative." "Eyeballing may have the advantage of ease, but it surely lacks scientific reliability in the sense of producing consistent results." *Ayers*, 887 F. Supp. at 1060. Smith's benchmarks are likewise unreliable. He offers no rationale for estimating James Bailey's loss at 40%, Michael Bailey's at 25% and Robert Bailey's at 50%. At the hearing, plaintiff indicated that these percentages came from interviews of Jane Bailey's family members conducted by either Smith, or his assistant. Such an arbitrary method for selecting these percentages cannot result in an accurate measure of the value of Jane Bailey's life to her family members.

Additionally, plaintiffs have not established that his method at calculating the value of the loss of society is generally accepted in the relevant scientific community. Plaintiffs include nineteen affidavits from economists that purportedly reflect the general consensus in the relevant community that evaluation of loss of society damages can be ascertained with a reasonable degree of scientific certainty. *See* Plfs.' Resp. at 9. However, many of the affidavits do not address the use of "value of life" figures to calculate the value of loss of society damages, many are duplicates and some are from Stan Smith himself. These affidavits do not negate the economists' responses in a 2009 survey in the Journal of Forensic Economics which asked economists if they would be willing to calculate hedonic damages in an injury case. Of the 173 economists who responded, 83.8 % responded that they would not because such damages "are far too speculative to quantify" and "[t]his should be left up to the trier of fact." *See* Def.'s Mot., Ex. C at 24; *see*

*also, Kurncz*, 166 F.R.D. at 389 (noting that Smith's methodology has been subjected to peer review, but that this review "has not led to general acceptance.").

Thus, Smith's testimony concerning loss of society damages is inadmissible because it is irrelevant and unreliable.

    C.    <u>Plaintiffs' Motion to Strike Certain of Defendant's Experts</u>

In the present motion, plaintiffs request that the court enter an order striking defendant's expert, Pat Dunleavy, because defendant failed to comply with Rule 26(a)(2)(D). On May 2, 2012, this court entered a modified scheduling order at the request of defendant adding additional days for discovery but not changing the September 4, 2012 trial date.

Federal Rule of Civil Procedure 26(a)(2)(B) requires that a party provide a written report of any expert witness it may use at trial. Further, Rule 26(a)(2)(D) controls the timing deadlines for disclosure of expert testimony.

> A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
> (I) at least 90 days before the date set for trial or for the case to be ready for trial; or
> (ii) if the evidence is intended solely to contradict or rebut the evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(D). Thus, defendant was required to submit Dunleavy's report by June 6, 2012. Rule 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Further, in addition to, or instead of this sanction,

-9-

the court may, on a motion and an opportunity to be heard (1) order payment of reasonable attorney fees and expenses caused by the failure, (2) inform the jury of the party's failure, and (3) impose other appropriate sanctions . . . ." Fed. R. Civ. P. 37(c)(1)(A)-(C).

Plaintiff did not receive Dunleavy's report until June 12, 2012. Dunleavy's report was dated May 31, 2012. Defendant maintains that this case requires the collection of a significant amount of information and that when plaintiffs submitted their expert interrogatories and requests for production of documents in January 2012, Dunleavy had not received all of the requisite information to formulate his opinion concerning plaintiffs' economic damages. Defendant admits that when it requests an adjustment to the scheduling order, it should have also requested an adjustment to the requirements of Rule 26(a)(2)(D).

As stated on the record at the hearing on this matter, the court declines to strike Dunleavy's expert testimony based on defendant's failure to comply with the Rule 26(a)(2)(D). Plaintiff received the expert's report on June 12, 2012, only six days after the deadline. Plaintiff has not demonstrated that he suffered prejudice or harm in his ability to prepare for trial due to the receipt of the report six days past the deadline. Therefore, plaintiffs' motion to strike certain of defendant's experts is denied.

IV.     Conclusion

Accordingly,

Plaintiffs' motion for partial summary judgment is GRANTED.

Defendant's motion *in limine* to strike Stan Smith's loss of society/ companionship damages testimony is GRANTED.

Plaintiffs' motion to strike certain of defendant's experts is DENIED.

SO ORDERED.

Dated: August 28, 2012

            s/George Caram Steeh
            GEORGE CARAM STEEH
            UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 28, 2012, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk