UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES BAILEY, as Personal Representative
of the Estate of Jane Bailey, deceased, and
ROBERT BAILEY,

      Plaintiff,                       Case No. 11-14199
                                          HON. GEORGE CARAM STEEH
vs.

NYLONCRAFT, INC.,

      Defendant.
_____/

## ORDER RESOLVING MOTION TO DETERMINE ATTORNEY LIEN (DOC. # 88)

Before the court is a dispute over an attorney fee. The underlying personal injury case was settled prior to trial. The current dispute is between counsel for plaintiff, Robert Darling, and the law firm from which he separated during the pendency of the personal injury action, Sommers Schwartz, P.C. ("Sommers"), each of which claims the bulk of the disputed fee.[1] The court has carefully considered the briefs and oral argument of respective counsel and its determination is set forth below.

---

[1] After settlement of the Bailey case, attorney fees were paid to referring counsel (not a part of this dispute) and the disputed fees were placed in attorney Fitzgerald's IOLTA account, which is where the funds remain to date. Darling and Sommers entered into a stipulated order in January 2013 to disburse costs incurred by Darling ($19,309.78) and Sommers ($29,167.98). Following that order, the parties entered into another stipulated order to distribute $100,000 to Darling and $100,000 to Sommers, acknowledging that the court had not yet made a determination on the lien issue and leaving open the possibility that a subsequent court order might require either Sommers or Darling to turn over a portion of the $100,000 to the other.

DISCUSSION

As of May 2011, Darling was a long-time partner at Sommers. This is when Sommers Schwartz was retained by the Bailey family on a contingent fee basis to serve as co-counsel with attorney Francis Fitzgerald. The Bailey case, brought into the firm by another long-term partner, was then assigned to Darling, who filed suit. The case remained pending during the remainder of Darling's tenure with Sommers, and it was one of the cases Darling took with him, at the election of the Bailey family, when he separated from the firm. The case settled shortly thereafter.[2]

Sommers asserts, generally, that its attorneys (primarily Darling) and staff members performed the "vast majority" of work on the Bailey case, noting that it was counsel of record for 13 of the 14 months the case was pending before it settled on August 29, 2012. Darling, in contrast, contends that the case was largely "dormant" and proceeded slowly prior to June 15, the date of his termination as a Sommers attorney, and that after that date the case rapidly moved toward settlement. Darling asserts that the work hours in this case, as in most cases, are heavily weighted toward the final period of the case.

---

[2] The date of this separation is an issue in this dispute. Darling points to a letter authored by Sommers CEO Joe Bourgon on June 13, 2012, which terminated Darling "effective as of 5:00 p.m. on June 15, 2012." Apparently Darling continued to use Sommers office space until approximately July 20 2012, and the substitution of counsel was not filed until August 1, 2012. While Darling may have received some benefit from occupying Sommers' office space until July, he was not receiving compensation from Sommers after that date, and it appears to the court that the date of his actual termination, June 15, 2012, is the correct date to use for deciding this attorney fee dispute.

Both Sommers and Darling present numerous exhibits to support their estimates of time spent on the Bailey file, as well as argument for and against alternative ways the court can employ its discretion on a fee determination in this case.

The court has considered the case law presented by counsel concerning the best approach for resolving this matter. At oral argument, Darling argued that case law relied on by Sommers represents "courtroom steps" or 11th hour change of counsel cases, whereas cases such as Ecclestone v. Ogne, 441 N.W.2d 7 (1989) (Mich. Ct. App. 1989), and James v. Blum, 793 F.2d 1292 (6th Cir. 1986), employing a lodestar quantum meruit methodology for the replaced attorney/law firm, are on point here. In contrast, Sommers asserts that the Morris v. City of Detroit, 472 N.W.2d 43 (Mich. Ct. App. 1991), Plunkett & Cooney, P.C. v. Capital Bancorp Ltd., 536 N.W.2d 886 (1995), and Reynolds v. Polen, 564 N.W.2d 467 (1997), cases demonstrate that courts have begun trending away from the lodestar method employed in James, and argues that Darling is advocating for an outdated approach.

"The law creates a lien of an attorney upon the judgment or fund resulting from his services." Ambrose v. Detroit Edison Co., 237 N.W. 2d 520 (Mich. Ct. App. 1975). A general principle recited in attorney lien decisions states that "[a]n attorney who has been discharged in Michigan is entitled to quantum meruit recovery, based on the number of hours worked multiplied by a reasonable hourly rate." In re Thomas M. Bagnasco, 863 F.2d 47 (6th Cir. 1988) (citing Ambrose, 237 N.W. 2d at 524). In considering such case law, the court notes that while this proposition is generally cited, each case turns on its particular facts, often involving the affirmative termination of

counsel by a client. See e.g. Barth v. Fieger, 2013 WL 238532 (Mich. App., Jan 22, 2013).

This case represents the departure of a law firm's partner from the firm, taking a client and active case with him. The case of Plunkett & Cooney, P.C. v. Capital Bancorp Ltd., 536 N.W.2d 886 (1995), involves a lawyer's departure from his law firm and retention of the client, but in the context of a fixed fee arrangement for the work. The case of Reynolds v. Polen, 564 N.W.2d 467 (1997), on the other hand, concerns an attorney's discharge and replacement with a different firm. Both Plunkett & Cooney and Reynolds are thus distinguishable from the instant case, but both represent an equitable division of the fee and provide some guidance to the court in this matter.

The court notes that the instant dispute does not involve duplication of work, which was discussed as a factor to be considered in Reynolds. In fact, it appears that from the perspective of the client/plaintiff, the transition from Sommers to Darling was largely a change in contact information.[3] Darling took the Bailey case given the desire of the plaintiff to continue with him. However, both Sommers and Darling took on the risk involved in the contingency fee case, and although the transition did not occur at the "11th hour," a substantial amount of work on the case had occurred. Moreover, the case ended up with Darling only because another senior shareholder at Sommers sent the work his way. Furthermore, it appears that by the time Darling took full

---

[3]For this reason, application of MRPC 1.5a (setting forth criteria for determination of a reasonable fee) is not helpful, since Darling represented the plaintiff pre- and post-termination.

responsibility for the case, the issues were limited to the amount of recovery rather than a contest over liability.

It is clear that hours worked times a reasonable hourly rate would represent only a fraction of the total fee for either side. Under the circumstances presented here, it is this court's opinion that neither Sommers nor Darling should be limited to an award of fees employing a simple lodestar formula, but that a ratio approach should be employed. The court finds this to represent the "quantum meruit," or what is deserved, for both Sommers and Darling, as after careful consideration of the briefing and oral arguments presented, the court is convinced that a proportional fee sharing is best here. This is especially true in this case where both sides have had to "reconstruct" the hours worked in a manner leaving both with questionable accuracy. Coming to a decision on this ratio involves consideration of the records and arguments presented by the parties, discussed below.

In the exhibits Sommers attaches to its briefing, including the affidavit of Sommers principal Joseph Bourgon, Sommers describes that as of June 15, 2012, it "had devoted a total of 214.9 attorney hours to the Bailey case, 116.8 paralegal hours, and librarian Mary Serpento had devoted 1.5 hours...." (Exhibit A, ¶ 52, to Sommers' Hearing Brief in Support of Attorney Lien, Doc. # 106). Sommers states that this amount of time represents 42% of the total hours devoted to the lawsuit prior to settlement. Sommers supports these numbers with what it has named the "S2 Chronology," a document comprised of both its and Darling's time records for the Bailey case. Sommers further describes this number as "conservative," as its portion does not document time for every email sent and received by Darling and Blick, and omits

numerous documents, conversations, and phone calls.  Moreover, Sommers questions Darling's record keeping, suggesting for various reasons why it appears to be inflated post-termination.  Sommers also emphasizes that it was counsel of record for 13 of the 14 months it was pending, representing "93% of the lawsuit's duration."

Sommers suggests a comparison to the hours devoted to the case by defense counsel may also be of assistance to the court.  Attorney Ken Merritt provided an affidavit stating that, as of June 15, 2012, he had spent 263.9 hours out of a total of 562.2 (see Sommers' Hearing Brief Exhibit I), which Sommers demonstrates is 47% of the total.  This falls generally in line with the percentage of hours spent on the case by Sommers as of June 15, as discussed above.

Darling, on the other hand, first argues that Sommers is not entitled to any amount of attorney fee for the Bailey matter.  Among other arguments, Darling asserts that it was Sommers' own decision to terminate his affiliation with the law firm, and that Sommers should be barred from recovery under principles of estoppel.[4]  Darling alternatively contends that Sommers, as replaced counsel, is entitled to a quantum meruit award derived solely from an hours times hourly rate methodology.  According to Darling's calculation, Sommers had many fewer hours in the case at the time of his

---

[4]Darling goes to some length depicting his separation from the firm as an involuntary termination, and voices a number of disputes he has with the firm concerning deferred compensation and other issues.  The court notes that Sommers has recently filed an action for declaratory judgment in state court concerning Darling's entitlement to compensation for periods prior to his separation.  The court finds it unnecessary to address any of those issues, this order being strictly limited to the Darling-Sommers attorney fee matter in the Bailey case.

termination that Sommers reflects in its current chronology.[5]  Darling points out that the "practice at SS was not to maintain contemporaneous time records on contingent fee cases," a fact that does not appear to be disputed by Sommers.

Darling's first compilation of his pre-separation hours came to a total of 67.  He now acknowledges 100 hours on the case pre-separation, stating this approximation is his "best available estimate."  (Darling Brief re Lien Claim, p. 41.)  Darling also apparently concedes 17 hours spent on the case by a Sommers associate.  Concerning the Sommers chronology, Darling argues that some of his hours reflected there were actually spent considering product liability claims not ultimately pursued, and that this time should not be included.  Ultimately, the court is not convinced that Darling spent only 100 hours on such a high profile case over the course of more than one year (this would amount to fewer than 10 hours per month), as records from both sides, as well as argument and this court's experience with the case reflect that it was receiving significant attention from the start.

In summary, the court cannot confidently reconstruct a close approximation of the number of hours spent by Sommers or Darling in the Bailey case.  Because it was a contingency case without contemporaneous time records, both Sommers' and Darlings'

---

[5]Darling complains that at the time of Joseph Bourgon's deposition, he could not estimate the time spent by Sommers on the file.  Darling argues against the court's consideration of the S2 chronology for the reason that it is "rank hearsay," contending that Sommers' time estimate has not been supported by deposition testimony and that the preparer of the estimate has not been identified or subject to examination.  Darling makes a similar argument about the information provided by attorney Merritt.  However, the court notes that Darling does not contend that this information could not be presented in admissible form, and will consider the information with the same measure of confidence it has in that presented by Darling.

estimates are simply estimates. Moreover, both Sommers and Darling make compelling arguments concerning the occurrence of omissions or inflation by the other, which in the court's opinion cancel each other out to some degree. However, the court finds the Sommers briefing, descriptions, and records to have been more carefully constructed and to carry more weight in guiding the court's decision on this matter. Having considered a number of options, the court finds the ratios suggested by Sommers in its briefs to be most persuasive, and will fashion a division of the fees accordingly.

Having chosen the June 15 separation date, as noted above, the court next credits Sommers' presentation concerning the 42% of total work represented by its time on the Bailey file. The court finds this number to be fairly consistent with that of attorney Merritt, whose affidavit is included with Sommers' presentation. Merritt states he had completed 263.9 hours, or 47% of his work on the case, as of that date. However, the court also finds Darling's argument about the case requiring more of his devoted attention and skill toward the end of its pendency to be convincing, as would be true with all cases, but certainly true with an accident case such as this. Furthermore, the court notes that the Bailey family elected to remain with Darling, and that the case came to a positive result for the Bailey family while under Darling's watch. For that reason, the court finds a larger share due to Darling than it would purely on the basis of a comparison of hours, which it will apply to the percentage due Darling.

The court, having considered Sommers' and Darling's arguments and records, has determined what it considers to be an equitable result in this matter. That result begins with the 42% Sommers contends it had in the case as of June 15, 2012, a number the court agrees represents a conservative estimate on the part of Sommers. It

thus appears to the court that a small upward adjustment will serve to fairly portray the division of labor on the file.  Accordingly, the court finds that 45% is a reasonable estimate of the percentage of effort on the Bailey file which is attributable to Sommers.

In further determining the proper ratio, the court deems it appropriate to also consider the weight of responsibility for the ultimate settlement, clearly carried by Darling, in order to reach a successful conclusion for the Bailey matter.  For the reason that settlement of the case was driven, negotiated, and achieved by Darling, the court will further adjust the percentages by a factor of 5.  Accordingly, the court will award Sommers 40% of the attorney fee (after costs), with 60% of the fee (after costs) awarded to Darling.

IT IS SO ORDERED.

Dated:  May 15, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 15, 2013, by electronic and/or ordinary mail and also to
Francis M. Fitzgerald, Francis M. Fitzgerald, P.C.,
35752 Harper Ave., Suite A, Clinton Twp., MI 48035.

s/Barbara Radke
Deputy Clerk